1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIREBAUGH CANAL WATER DISTRICT, *et al.*,<br><br>                Plaintiffs,<br><br>        v.<br><br>UNITED STATES OF AMERICA<br><br>                Defendants. | 1:88-cv-00634 OWW DLB<br><br>Partially Consolidated With:<br>1:91-cv-00048 OWW DLB<br><br>MEMORANDUM DECISION RE PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD (DOC. 765) |
| SUMNER PECK RANCH, *et al.*,<br><br>                Plaintiffs,<br><br>        v.<br><br>UNITED STATES BUREAU OF RECLAMATION, *et al.*,<br><br>                Defendants. | |

## I. <u>INTRODUCTION.</u>

Before the court for decision is Central California Irrigation District and Firebaugh Canal Water District's ("Plaintiffs") motion to supplement the Administrative Record ("AR") with twenty-two (22) additional documents. Doc. 765. Of

1

those, Federal Defendants have agreed to add four (listed below) to the AR, but object to the remaining eighteen (18).  Doc. 793. Defendants Westlands Water District, Panoche Water District, and Panoche Drainage District ("District Defendants") object to supplementation of the record with any of the documents.  Doc. 795.  District Defendants also request that "the scope of the issues remaining before the Court and the scope of the AR should be clarified prior to the upcoming motions for summary judgment...."  *Id*.  Environmental Intervenors take no position on the motion.  Doc. 796.  Plaintiffs filed a reply.  Doc. 802.

The sole remaining claim against Federal Defendants in this case concerns the Bureau of Reclamation's ("Reclamation" or the "Bureau") alleged failure to provide drainage service to the San Luis Unit pursuant to Section 1(a) of the San Luis Act.  *See* 1:91-cv-0048 OWW DLB, Nov. 19, 2004 Mem. Dec. ("11/19/04 Decision") at 25, 28-29, 36, 42.  This claim arises under Section 706(1) of the Administrative Procedure Act ("APA"), 5 USC § 706(1), which permits a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed."

## II. APPLICABLE LEGAL STANDARD

The APA generally limits the scope of judicial review to the administrative record.  5 U.S.C. § 706 (directing the court to "review the whole record or those parts of it cited by a party.").  "When a plaintiff challenges a final agency action,

2

judicial review normally is limited to the administrative record in existence at the time of the agency's decision." *Friends of The Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000). Under such circumstances, the agency is only required to "justify its final action by reference to the reasons it considered at the time it acted." *Id.*

However, where a plaintiff invokes 5 U.S.C. § 706(1) to compel an agency to take an action mandated by law, "review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *Id.* (emphasis added); *see also Independence Min. Co., Inc. v Babbitt*, 105 F.3d 502, 511-12 (where "court is examining an agency's actions prior to final agency decision for purpose of measuring agency delay,... there is no date certain by which to evaluate an agency's justifications for its actions."). The reason for this distinction is that, "when a court is asked to review agency inaction before the agency has made a final decision, there is often no official statement of the agency's justification for its actions or inactions." *San Francisco Baykeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002). *Friends of the Clearwater* defines an exception to the record review rule for cases challenging agency delay.[1]

_____

[1] Plaintiffs invoke a list of eight exceptions to the record review rule, which appear to come from *Esch v. Yeutter*, 876 F.2d 976, 992 (D.C. Cir.

The caselaw provides limited guidance on the application of this exception. *Friends of the Clearwater*, a case challenging the Forest Service's failure to prepare a supplemental environmental impact statement ("SEIS") under NEPA, supplemented the record with studies prepared by the Forest Service <u>after</u> the agency sent plaintiffs a letter refusing to prepare a SEIS. 222 F.3d at 560-61. Likewise, in *San Francisco Baykeeper*, the Ninth Circuit permitted consideration of an extra-record program review document describing past and ongoing agency action. 297 F.3d at 886. The district court in *Consejo de Desarrollo Economico de Mexicali, AC v. United States*, 438 F. Supp. 2d 1207, 1221 (D.

_____

1989):

> (1) when agency action is not adequately explained in the record before the court;
> (2) when the agency failed to consider factors which are relevant to its final decision;
> (3) when an agency considered evidence which it failed to include in the record;
> (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly;
> (5) in cases where evidence arising after the agency action shows whether the decision was correct or not;
> (6) <u>in cases where agencies are sued for a failure to take action</u>;
> (7) in cases arising under the National Environmental Policy Act; and
> (8) in cases where relief is at issue, especially at the preliminary injunction stage.

(emphasis added). The sixth *Esch* exception parallels the exception articulated in *Friends of the Clearwater*.

Federal Defendants and District Defendants entirely ignore the *Friends of the Clearwater* line of cases, and instead insist on applying the familiar four exceptions permitting supplementation in 706(2) cases when: (1) necessary to determine if the agency considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) necessary to explain technical terms or complex subjects; or (4) there has been a showing of bad faith. *Fence Creek Cattle Co. v. United States Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010)(citing *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir 2005). A court is not limited to those four exceptions in a 706(1) case.

Nev. 2006), *rev'd on other grounds*, 482 F.3d 1157 (9th Cir. 2007), a 706(1) action to compel agency action unlawfully withheld, applied the *Friends of the Clearwater* exception more broadly, refusing to limit its review to the administrative record and those documents that met one of the Lands Council exceptions, instead considering "materials submitted by Plaintiffs as they relate to the present matter."

III. <u>ANALYSIS</u>

A.   <u>The Lodged Administrative Record.</u>

Federal Defendants lodged a certified AR consisting of more than 38,700 pages on March 21, 2010.  The documents concern three drainage-related decisions:  (1) the 2007 Record of Decision, with a feasibility report to Congress, on the San Luis Drainage Feature Re-Evaluation ("2007 SLDFR ROD"); (2) the development, issuance, and implementation of Use Agreements for the San Luis Drain through the Grasslands Bypass Project, including a related 2009 Record of Decision ("2009 GBP ROD"); and (3) Reclamation's approval of funding agreements for local drainage projects, including projects consistent with the Westside Regional Drainage Plan.  In general, the AR documents largely date to the early 1990s and later, after reclamation began to consider "in-valley" drainage treatment and disposal options following the closure of Kesterson Reservoir.  A few earlier reference documents are also included.

1

**B.    Scope of the Remaining Claims in this Case.**

2

       Whether it is appropriate to supplement the record with the

3

offered documents turns, in part, on the purpose(s) for which the

4

documents are offered.  It is undisputed that only an APA Section

5

706(1) claim remains in this case.  To prevail on a 706(1) claim,

6

Plaintiffs must demonstrate that:  (1) an agency had a

7

nondiscretionary duty to act; and (2) the agency either

8

unreasonably delayed or unlawfully withheld an action on that

9

duty.  *Timbisha Shoshone Tribe v. Salazar*, 697 F. Supp. 2d 1181,

10

1187 (E.D. Cal. 2010) (citing *Norton v. S. Utah Wilderness*

11

*Alliance* ("*SUWA*"), 542 U.S. 55, 63-64 (2004)).

12

       The nature of the drainage duty owed by Federal Defendants

13

has been circumscribed by the Ninth Circuit's ruling in *Firebaugh*

14

*Canal Co. v. U.S.*, 203 F.3d 568, 574, 576 (9th Cir. 2000), which

15

acknowledged that "the San Luis Act clearly expresses the intent

16

of Congress to provide for the interceptor drain prior to the

17

construction of the San Luis Unit," approved of the "district

18

court's finding that the San Luis Act mandated the Secretary to

19

provide the interceptor drain," and further found that the

20

"district court properly held that [subsequent] appropriations

21

riders, without more, failed to repeal the Secretary's duty to

22

provide drainage under the San Luis Act."  However, these

23

findings "d[id] not end the inquiry":

24

                The Government contends that Congress, through actions
                taken after the San Luis Act, has encouraged the
                Department of Interior to investigate and pursue

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

drainage solutions other than the interceptor drain contemplated by the San Luis Act. Since the late 1970s, Congress has appropriated funds so that the Bureau of Reclamation could, in cooperation with the State, local water districts, and other entities, examine solutions to drainage other than the construction of the master drain.FN6  We reject the Government's contention that this action has eliminated the Bureau's duty to provide drainage; however, we do find that the subsequent Congressional action supplements the drainage solutions available to the Department of the Interior. *See City of Los Angeles v. Adams*, 556 F.2d 40, 50 (D.C.Cir. 1977); *Skoko v. Andrus*, 638 F.2d 1154, 1158 (9th Cir. 1979); *District of Columbia v. Potomac Elec. Power Co.*, 402 A.2d 430, 435-36 (D.C. 1979). If, as the district court concluded, the interceptor drain was the only method through which the Department could meet its drainage obligations under the San Luis Act, then the alternative drainage solutions that Congress has supported for years would be superfluous. Thus, although the San Luis Act limits the drainage solution to an interceptor drain to the Contra Costa Delta, the subsequent Congressional action indicates that the Department of the Interior can meet its drainage obligations through means other than the interceptor drain. Therefore, we hold that the subsequent Congressional action has not eliminated the Department's duty to provide drainage, but that it has given the Department the authority to pursue alternative options other than the interceptor drain to satisfy its duty under the San Luis Act.

> FN 6:  *See* "Reclamation Wastewater and Groundwater Study and Facilities Act of 1992", Pub. L. No. 102-575, §§ 1601-1617, 106 Stat. 4600, 4663 (1992) (enacting 43 U.S.C. §§ 390h to 390h-15 (West Supp.1997)); "Central Valley Project Improvement Act", *id.* at §§ 3401-3411, 106 Stat. 4600, 4706.

*Id*. at 577.

Footnote 6 refers to the Reclamation Wastewater and Groundwater Study and Facilities Act of 1992, Pub. L. No. 102-575, §§ 1601-1617, 106 Stat. 4600, 4663 (1992), which generally provides the Secretary of Interior the authority:

> to undertake a program to investigate and identify opportunities for reclamation and reuse of municipal, industrial, domestic, and agricultural wastewater, and

7

1
2
3
4

> naturally impaired ground and surface waters, for the
> design and construction of demonstration and permanent
> facilities to reclaim and reuse wastewater, and to
> conduct research, including desalting, for the
> reclamation of wastewater and naturally impaired ground
> and surface water.

*Id*. at § 1602(a).  The Secretary's ability to implement a program

to reclaim impaired groundwater was limited to measures

recommended in a 1990 Management Plan (otherwise known as the

"Rainbow Report"):

> The Secretary shall not investigate, promote or
> implement, pursuant to this title, any project intended
> to reclaim and reuse agricultural wastewater generated
> in the service area of the San Luis Unit of the Central
> Valley Project, California, except those measures
> recommended for action by the San Joaquin Valley
> Drainage Program in the report entitled A Management
> Plan for Agricultural Subsurface Drainage and Related
> Problems on the Westside San Joaquin Valley (September
> 1990).

*Id*. at § 1602(d).  The Rainbow Report recommends a complex mix of

"in-valley" solutions, without an interceptor drain with its

terminus at the Contra Costa Delta.  AR 38352-60.

    In light of the Ninth Circuit's decision, the text of the

Reclamation Wastewater and Groundwater Study and Facilities Act

of 1992 cited therein, and the Rainbow Report, <u>the Bureau has no</u>

<u>obligation to construct an interceptor drain so long as the</u>

<u>Bureau can find some other solution that works</u>.  Plaintiffs

cannot be permitted to pursue a 706(1) claim that the Bureau has

unlawfully delayed construction of an interceptor drain, <u>because</u>

<u>the Bureau has no absolute, non-discretionary obligation to</u>

<u>construct an interceptor drain</u>.  The Bureau simply has an

8

unavoidable obligation to implement <u>some kind of drainage</u>
<u>solution</u>.

The district court has already so determined in the 11/19/04
Decision, which applied *SUWA*'s holding that a claim under 706(1)
can only proceed "where a plaintiff asserts than an agency failed
to take a discrete agency action <u>that it is required to take</u>."
11/19/04 Decision at 25 (citing 124 S. Ct. at 2379)(emphasis
added).  *SUWA* addressed a challenge to a statute that gave
discretion to agency decisionmakers in the form of broadly-
worded, open-ended commands.  *Id*. at 27.  Under those
circumstances, the final agency action requirement was not
satisfied.  *Id*.  Plaintiffs' 706(1) claim regarding the drainage
obligation was distinguished from *SUWA* because:

> Here, Congress has given a statutory command to provide
> a drainage solution for the San Luis Unit.  The Ninth
> Circuit has determined there has been a failure by the
> Federal Defendants to provide such a solution.
> <u>Plaintiffs do not challenge the form of the drainage</u>
> <u>solution, a challenge that might be precluded under</u>
> <u>*SUWA*, but rather that Federal Defendants have failed to</u>
> <u>provide any drainage solution</u>.  Plaintiffs § 706
> unreasonable delay claim is not barred by the final
> agency action doctrine.

*Id*. at 28-29.[2]  Plaintiffs did not seek reconsideration of this
ruling.

---

[2] The district court also rejected the argument that Plaintiffs' had
standing to sue over the drainage obligation as intended beneficiaries of the
San Luis Act.  1:09-cv-00048, Doc. 928 at 46-47; Doc. 948 at 31.  Instead,
Plaintiffs were found to have standing to assert an APA claim based on failure
to provide drainage because Plaintiffs fell within the zone of interest of the
San Luis Act.  Specifically, Plaintiffs interests are not "so marginally
related to or inconsistent with the purposes implicit in the statute that it
cannot reasonably be assumed that Congress intended to permit the suit."  Doc.
948 at 33.

To the extent Plaintiffs offer these offered documents to prove that the drainage solution the Bureau plans to implement will not prevent impaired groundwater from migrating under their downslope lands, their challenge is to the form of the drainage solution, a use expressly disclaimed by the 11/19/04 Decision. Plaintiffs also suggest that the Bureau has construed its drainage obligation too narrowly, and thereby unlawfully withholds action on its drainage "obligation" (e.g., the alleged obligation to protect downslope landowners).  Plaintiffs maintain certain questions were never addressed by the *Firebaugh* ruling:

> [N]amely, whether the duty to provide drainage to the San Luis Unit means intercepting, controlling and disposing of drainage water originating in the San Luis Unit before it does damage to adjoining areas and, if that duty is neglected, whether the duty continues to follow the escaped poor quality drainage water and hydraulic pressure that originated in and was caused by the irrigation of the San Luis Unit by the CVP.

Doc. 802 at 2.  It is unclear whether this amounts to anything other than a disguised challenge to the form of the drainage solution.

Plaintiffs offer several alternative purposes for the documents.  During oral argument, Plaintiffs advanced the theory that the documents help define the Bureau's duty by demonstrating either: (a) Congress' intent that "drainage" includes "control of the corpus of drainage water" generated by irrigation within the San Luis Unit; or (b) the Bureau's own interpretation of the San Luis Act consistent with that intent.  Plaintiffs also suggest

10

1    the documents help to demonstrate that the Bureau's delay in

2    providing drainage is unreasonable under the circumstances.  *See*

3    Doc. 766 at 6.  These legal theories are not completely

4    foreclosed by previous decisions.  Whether these theories justify

5    supplementation of the record with the particular documents

6    offered is a different question.

7

8    C.    Documents Federal Defendants Agree to Add to the Record.

9          Federal Defendants do not object to supplementation of the

10   record with the following four documents:

11

12        Document 815 (337 pp) -- "San Luis Unit, Central Valley
          Project, California, A Report on the Feasibility of Water
13        Supply Development" Report of the Regional Director,
          Substantiating Report and Cooperating Agencies Reports, May
14        6, 1955.

15        Document 826 (52 pp) -- "San Luis Unit Central Valley
          Project California Plan for Disposal of Subsurface
16        Agricultural Drainage," United States Department of the
          Interior, Bureau of Reclamation, June 1, 1969.

17        Document 834 (35 pp) -- Schmidt, K.D. 1988 Report of Aquifer
18        Tests for Shallow Wells in Firebaugh Mendota Area.
          Unpublished report Prepared for the San Joaquin Valley
19        Drainage Program, Sacramento California, May 16, 1988.

20        Document 835 (53 pp) – Schmidt, K.D. 1989 Results of 14 Day
          Aquifer tests Near Mendota. Unpublished Report Prepared for
21        the San Joaquin Valley Drainage Program, Sacramento,
          California, February 9, 1989.

22   Federal Defendants concede Documents 834 and 835 were cited in

23   documents already included in the AR and were considered by the

24   decisionmakers.  Federal Defendants also agree that Documents 815

25   and 825 provide relevant historical information.

26        Despite these concessions, District Defendants object to

27   inclusion of these documents in the record.  In particular,

28
                                 11

District Defendants maintain that the duty to provide drainage has been conclusively determined to only apply to the lands within the San Luis Unit.  Accordingly, District Defendants question the relevance of Documents 835 and 836, which concern groundwater conditions in the Plaintiffs' service area.  Although there are legitimate questions about the legal significance of these documents, Federal Defendants' concession that these four documents are appropriately included in the record is sufficient to include them.  The request to supplement is GRANTED as to Documents 815, 825, 834, and 835.  District Defendants' objection to the inclusion of these four documents in the AR is OVERRULED.

D.   **Many of the Remaining Documents Either Do Not Need to be Added to the Record to be Considered or Are Already Part of the Record.**

     Many of the documents for which supplementation is sought are: (a) better considered through the mechanism of judicial notice, (b) citable legal authorities that can be referenced as a matter of law, or (c) already part of the record.

          1.   **Documents 816-817, 828-829, 831-832 Are Best Considered through the Mechanism of Judicial Notice.**

     This group of documents consists of transcripts, or portions of transcripts, before committees of Congress or the California legislature, either prior to the enactment of the San Luis Act (Documents 816-17), in connection with proposed amendments thereto

1  (Document 828), or regarding Kesterson Reservoir (Document 828, 831 and

2  832).

3    Document 816 (201 pp) -- Report on Hearings before the
     Subcommittee on Irrigation and Reclamation of the Committee
4    on Interior and Insular Affairs, United States Senate, 85th
     Congress, Second Session, on S.1887, "A Bill to Authorize
5    the Secretary of Interior to Construct the San Luis Unit of
     the Central Valley Project, California, to Enter into an
6    Agreement with the State of California with Respect to the
     Operation and Construction of Such Unit, and for Other
7    Purposes," March 17 and 18, 1958.

8        Justification for Inclusion: This report includes the
         exchange between Senator Anderson and Harvey Banks of
9        the DWR in the Subcommittee before the adoption of the
         San Luis Act approving the amendment that included the
10       requirement that drainage be provided. The exchange
         indicates that the purpose of the requirement of
11       drainage is to protect downslope lands from impacts.

12   Document 817 (60 pp) -- Excerpts from report of Hearing
     before the Subcommittee on Irrigation and Reclamation of the
13   Committee on Interior and Insular Affairs, U.S. Senate, 86th
     Congress, First Session, on S.44 "A Bill to Authorize the
14   Secretary of Interior to Construct the San Luis Unit of the
     Central Valley Project, California, to Enter into an
15   Agreement with the State of California with Respect to the
     Operation and Construction of Such Unit, and for Other
16   Purposes," March 16, 1959

17       Justification:  Transcript of testimony of C.W. Bates,
         Manager of Central California Water District requesting
18       that the San Luis Unit Act include a requirement of
         interception and collection of drainage associated with
19       irrigation of the San Luis Unit in order to protect the
         lower elevations lands from drainage impacts.
20

21   Document 828 (62 pp) -- Hearing on HR 4390, to Amend the Act
     of June 3, 1960 (74 Stat. 156) Authorizing the Secretary of
22   the Interior to Construct the San Luis Unit, Central Valley
     Project, California, April 20, 1977

23       Justification:  Commissioner of Reclamation describes
         drainage requirement as: "pick up and remove the
24       drainage water from beneath those project lands that
         are affected" (p. 16, Bates 39526).
25

26   Document 829 (692 pp) -- Joint Hearing of the Assembly
     Water, Parks and Wildlife committee and Senate Natural
27   Resources and Wildlife Committee on San Joaquin Valley
     Agricultural Drainage and Kesterson National Wildlife
28   Refuge, Nov. 16, 1984

                              13

1

2

3

4

5

6

**Justification**: The Department of Interior agrees that the Interceptor Drain and collection of drainage was to protect both existing agricultural lands such as the Plaintiffs from downslope flows and lands in the San Luis Unit going into production ( p. 14 , Bates 39591). The Bureau agrees that even though drainage waters are outside of the San Luis Unit because Kesterson was utilized as a disposal site, the Department of Interior has a duty to clean up the selenium that has escaped Kesterson through seepage of drainage water (p. 44, Bates 39620).

7

8

9

**Document 831 (321 pp)** -- Agricultural Drainage Problems and Contamination at Kesterson Reservoir, Hearing before the Subcommittee on Water and Power resources of the Committee on Interior and Insular Affairs, House of Representatives, held in Los Banos, California, March 15, 1985.

10

11

12

13

**Justification**: Testimony before United States Committee on Interior and Insular Affairs, House of Representatives, about increasing pollution of shallow waters within Firebaugh Canal Water District (p. 125-126, Bates 40419-40420) and effect of subsurface waters flowing downslope and appearing on lower lands (p. 426, Bates 40570).

14

15

16

17

18

**Document 832 (147 pp)** -- Hearing before the Subcommittee on Water and Power of the Committee on Energy and Natural Resources, United States Senate, 95th Congress, First Session on ... S.1157, A Bill to Authorize the Secretary of the Interior to Perform Studies Relating to Disposal of Drain Water and to Construct Interim Corrective Measures Deemed Necessary for the San Luis Interceptor Drain, July 16, 1985.

19

20

21

22

**Justification**:  Testimony of Assistant Secretary for Water and Science of Department of Interior in regard to plans to correct for drainage impacts caused by closure of Interceptor Drain system and Kesterson Reservoir and admitting that drainage water not intercepted may affect Grasslands area in same manner (p. 42-44, Bates 40697-40698).

23

24

25

26

27

These documents are judicially noticeable portions of the legislative history of the San Luis Act, and may be relied upon by the parties in legal argument.  Plaintiffs offer no specific reason why they must be included the AR.  The request to supplement the record with Documents 816-817, 828-829 and 831-832 is DENIED.  Federal

28

14

Defendants' and District Defendants' objections to inclusion of these

documents in the record are SUSTAINED.


      2.   <u>Documents 818, 820 & 833 are Legal Authorities that Can</u>
          <u>be Cited by the Parties and the Court.</u>

<u>Document 818</u> (7pp) -- San Luis Act, Public Law 86-488, 74
Stat. 156

      <u>Justification</u>: Although the Court could take judicial
      notice of the contents of the San Luis Act and the fact
      it has not been amended to alter the Department of
      Interior's duties since its adoption, inclusion within
      the Administrative Record is appropriate for the
      Court's convenience.

<u>Document 820</u> (3 pp) -- Order upon Motion for Preliminary
Injunction in *CCID v. Udall*, No. 2356 ND Civil, Southern
District of California, Northern Division, by Judge M.D.
Crocker, July 15, 1963

      <u>Justification</u>: Judge Crocker entered judgment in the
      action between FCWD and CCID and United States denying
      the preliminary injunction sought but finding: "That
      such act clearly requires a drainage system to protect
      Plaintiff's land (FCWD and CCID) and must be complied
      with and drainage provided before water is delivered to
      and stored in the San Luis Dam."

<u>Document 833</u> (6 pp) -- Judge Edward D. Price's Memorandum
Decision denying Firebaugh Plaintiffs' Request to Intervene
in *Westlands v. United States*, USED Case No. CV F-81-245
Consolidated with No. CV F-79-106 ("Barcellos"), December
30, 1986

      <u>Justification</u>: Judge Price Memorandum of Decision
      "Clearly, the removal of this drainage system tenders a
      serious threat to the downslope lands lying below the
      Westlands Water District (p. 4: 23-25, Bates 40824).

    As with the previous group of documents, there is no need to

supplement the AR with copies of the San Luis Act or Judge

Crocker's or Judge Price's unpublished decisions in related

cases.   These legal authorities can be cited by any party or the

court.   The request to supplement the record is DENIED as to

Documents 818, 820, and 833.   Federal Defendants' and District

Defendants' objections to inclusion of these documents in the

record are SUSTAINED.

      3.   <u>Documents 830 is Already in the Administrative Record.</u>

     <u>Document 830 (84 pp)</u> -- California State Water Resources
Control Board Order No. WQ-85-1

          <u>Justification</u>:  The State Water Resources Control Board
finds that the Bureau leakage of drainage water from
Kesterson Reservoir into subsurface aquifers is a
discharge and pollution by the Bureau (p. 25, Bates
39389).

The document submitted by Plaintiffs is an incomplete copy of WQ

85-1.  A complete copy is already in the record.  Plaintiffs

agree that the request to supplement the record with Document 830

should be DENIED.  Federal Defendants' and District Defendants'

objections to inclusion of this document in the AR are SUSTAINED.

E.    <u>Remaining Documents.</u>

     <u>Document 819</u> (28 pp) -- Agreement between the United States
and the California Department of Water Resources for
Construction and Operation of the Joint Use Facilities of
the San Luis Unit, December 30, 1961.

          <u>Justification</u>:  Agreement shows interpretation of San
Luis Act required each act of collection, interception
and transport away from San Luis Unit and Plaintiffs'
downslope lands.

    This document does not address drainage in the San Luis

Unit.  Plaintiffs have not explained its relevance to their

706(1) claim.  The motion to supplement the AR with Document 819

is DENIED.  Federal Defendants' and District Defendants'

objections to inclusion of this document in the AR are SUSTAINED.

1

**Document 821 (9 pp)** -- Statement of United States Bureau of Reclamation to the Water Pollution Subcommittee of the California Assembly's Interim Committee on Water, by Vernon J. Hanson, Regional Project Development Engineer, December 9, 1963.

2

3

4

> **Justification**:  Department of Interior description of drainage system is to collect, intercept and prevent damage to adjacent areas as well as protect San Luis Unit lands.

5

6

**Document 822 (43 pp)** -- Letter from Acting Commissioner of Reclamation William I. Palmer to Congressman John McFall, December 13, 1963.

7

8

9

> **Justification**:  Commissioner of Reclamation commitment that San Luis Act will be complied with and drainage interception and disposal will be operative when needed.

10

11

**Document 823 (8 pp)** -- "The Bureau and the Drain," a talk given by Robert J. Pafford, Jr., Regional Director, Bureau of Reclamation at the Water Resources Conference, Fresno, California, May 1964.

12

13

14

> **Justification**:  Bureau of Reclamation describes that drainage problems caused by shallow and rising saline water in lower eastern edge of San Luis service area will occur if facilities to collect and dispose of water are not in operation. Assures that operation will commence no later than July 1968.

15

16

17

**Document 824 (8 pp)** -- "The Bureau and the Drain," a talk given by Robert J. Pafford, Jr., Regional Director, Bureau of Reclamation at the Water Resources Conference, Fresno, California, May 14, 1965.

18

19

20

> **Justification**: Bureau of Reclamation Regional Director admits that destruction will occur unless drainage interception is provided.

21

22

**Document 825 (26 pp)**: "Drainage Problems in the San Luis Unit, Central Valley Project," by John A. McKeag, Drainage Specialist, United States Bureau of Reclamation, February 1967.

23

24

25

> **Justification**:  Bureau of Reclamation describes drainage problems that will occur when imported surface water supply is provided if drainage is not collected, intercepted and disposed of.

26

27

28

17

1

2

        Document 827 (7 pp):  Water Projects Review Analysis, San
        Luis Unit CVP by Mid-Pacific Region, Bureau of Reclamation,
        March 14, 1977.

3

4

5

6

            Justification: Department of Interior describes
            adjacent areas to the San Luis Unit being destroyed
            over time if the drain is not completed and operated
            and problems caused by highly saline waters entering
            San Joaquin River (pps 2-3, 7, Bates 39509, 39510,
            39514).

7

8

9

10

11

12

13

14

15

16

17

18

    These documents, dating to the 1960s and 1970s, are

descriptions of the nature and impact of the area-wide drainage

problem, issued by the Bureau and various Bureau employees.  In

general, Federal Defendants disclaim that these documents were

not relied on or considered by Reclamation in developing any of

the three actions described in the AR.  Although, under *Friends

of the Clearwater*, the record is not strictly limited to those

documents considered by Federal Defendants in developing the 2007

SLDFR ROD, the Grasslands Bypass Project, and/or in approving the

local drainage projects, Plaintiffs have failed to offer any

valid legal theory for inclusion of these documents in the AR.

19

20

21

22

23

    The motion to supplement the AR with Documents 821-25 and

827 is DENIED.  Federal Defendants' and District Defendants'

objections to inclusion of these documents in the AR are

SUSTAINED.

24

25

        Document 836 (57 pp) -- Factors Affecting Drainage in
        Firebaugh Canal Water District and in Firebaugh Canal Water
        District and in Firebaugh Canal Water District and Kenneth
        D. Schmidt and Associates, October 1, 2002.

26

27

28

            Justification:  Further tests and modeling of quality
            of downslope migrating drainage water and quantity of
            drainage water entering Firebaugh and CCID from San
            Luis Unit after termination of interception and
            collection Department of Interior Drainage Reevaluation

1

EIS page 9368

2

    Federal Defendants agreed to include earlier data concerning

3

groundwater conditions in Plaintiffs' service area collected and

4

analyzed by Dr. Schmit in 1988 and 1989 (Documents 834 and 835).

5

Plaintiffs assert Dr. Schmit verbally informed the Bureau of the

6

content of his 2002 report (Document 836) in a telephone call

7

referenced by the Bureau in the AR.  Federal Defendants object

8

that the verbal communication referenced in the EIR was different

9

from the content of the report and insist that the report was not

10

provided to the agency during the administrative process.

11

However, Federal Defendants concede that the agency did consider

12

Dr. Schmit's two previous reports.  Although it is not clear how,

13

if at all, his reports will be relevant to the legal issues

14

before the court on summary judgment, under *Friends of the*

15

*Clearwater*, the record in a 706(1) case is not limited to those

16

documents before the agency at any particular date and time.  For

17

the sake of completeness, Plaintiffs' request to supplement the

18

record with Dr. Schmit's 2002 report (Document 836) is GRANTED.

19

Federal Defendants and District Defendants' objections are

20

OVERRULED.

21

22

23

24

**IV. CONCLUSION**

25

    The motion to supplement the record is GRANTED as to

26

Documents 815, 826, 834, 835, and 836, and DENIED as to all other

27

Documents.

28

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    Plaintiffs shall prepare a form of order consistent with this memorandum decision within five (5) days of electronic service.


SO ORDERED
DATED:   September 17, 2010

                                  /s/ Oliver W. Wanger
                                    Oliver W. Wanger
                       United States District Judge