UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIREBAUGH CANAL WATER DISTRICT and CENTRAL CALIFORNIA IRRIGATION DISTRICT,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants, and<br><br>WESTLANDS WATER DISTRICT,<br><br>Defendants-in-Intervention. | 1:88-cv-00634 LJO DLB<br>1:91-cv-00048 LJO DLB<br>(Partially Consolidated)<br><br>MEMORANDUM DECISION GRANTING FEDERAL DEFENDANTS' MOTION FOR ENTRY OF JUDGMENT (DOC 937) |

These consolidated cases concern a long-standing dispute over the provision of drainage to landowners on the west side of California's San Joaquin Valley. Upslope landowners and recipients of water from the San Luis Unit ("SLU") of the Central Valley Project ("CVP") claimed Section 1(a) of the San Luis Act (the "Act"),[1] P.L. 86-488, 74 Stat. 156, obligated Federal Defendants to construct the "San Luis Drain" called for in the Act. Downslope landowners outside the SLU service area argued, among other things, that Federal Defendants' duty to provide drainage extended to their lands, which they claimed were being damaged by seepage from upslope lands.

The claims in these cases have for all effective purposes been tried in two phases. In the First

---

[1] In pertinent part, Section 1(a) of the Act provides: "Construction of the San Luis unit shall not be commenced until the Secretary has … received satisfactory assurance from the State of California that it will make provision for a master drainage outlet and disposal channel for the San Joaquin Valley, as generally outlined in the California water plan, Bulletin Numbered 3, of the California Department of Water Resources, which will adequately serve, by connection therewith, the drainage system for the San Luis unit <u>or</u> has made provision for construction the San Luis interceptor drain to the delta designed to meet the drainage requirements of the San Luis unit as generally outlined in the report of the Department of the Interior, entitled 'San Luis Unit, Central Valley Project,' dated December 17, 1956." (Emphasis added.)

1

Phase, the district court found that Federal Defendants' owed a duty to landowners <u>within</u> the SLU to specifically move forward with plans to construct the San Luis Drain. On that issue, "Partial Judgment" was entered March 10, 1995. Doc. 422.[2] The district court made explicit findings under Rule 54, concluding these "right-to-drainage claims" were clearly separable from the remaining claims; there was no just reason for delay in the entry of judgment; and entry of judgment would aid in the expeditious resolution of the case. Doc. 442, at 4-5. Therefore, the "Partial Judgment" operated as a partial final judgment for purposes of Rule 54. Federal Defendants were ordered to "without delay, take such reasonable and necessary actions to promptly prepare, file, and pursue an application for a discharge permit for the San Luis Drain to comply with section 1(a) of the San Luis Act to provide drainage to the San Luis Unit." *Id*. at 11-12. The district court specifically "reserve[d] jurisdiction to enforce compliance with [its] order and to enable the parties to apply to this court for such other orders as may be necessary for the implementation of [the] judgment." *Id*. at 12.

The Ninth Circuit affirmed in part and reversed in part, concluding that although there was a drainage duty, Federal Defendants must be afforded discretion to determine how drainage service is to be provided. *Firebaugh Canal Co. v. United States*, 203 F.3d 568 (9th Cir. 2000). After remand, on December 18, 2000, the Partial Judgment was modified to reflect the Ninth Circuit's ruling, and Federal Defendants were instead ordered to "without delay, provide drainage to the San Luis Unit pursuant to the statutory duty imposed by section 1(a) of the San Luis Act." Doc. 654 at 4. Federal Defendants were further ordered to submit "a detailed plan describing the action or actions, whether short term or long term, they will take to promptly provide drainage to the San Luis Unit, which plan shall contain a schedule of dates by which the action or actions described in the plan will be accomplished." *Id*. at 4. The district court again "reserve[d] jurisdiction to enforce the provisions of the Partial judgment. *Id*. Pursuant to this authority, the district court has been receiving periodic status reports from the parties,

---

[2] Unless otherwise noted, "Doc." references are to Docket Entries in Lead Case No. 1:88-cv-00634 LJO DLB.

both leading up to and following the issuance by Federal Defendants of a Record of Decision regarding the provision of drainage. More than eleven years after the Partial Judgment was revised, progress toward a drainage solution has been, to say the least, slow. *See* Doc. 916 at 31-34 (finding that despite "slow progress," Federal Defendants' compliance with a court ordered schedule, among other things, precluded an APA unreasonable delay claim). Nevertheless, the December 2000 Order Modifying the Partial Judgment operates as final judgment as to those claims. No further action on those claims is requested or necessary.

The remaining "Second Phase" claims, brought by the downslope landowners, Firebaugh Canal Water District and Central California Irrigation District ("Plaintiffs"), were resolved in a series of orders. Plaintiffs' Fifth Amended Complaint, filed June 1, 2004, contains a total of six claims. *See* Doc. 930 in 1:91-cv-00048. By November 2004: (a) the First (continuing negligence), Second (continuing nuisance), and Third (continuing trespass) Claims had been dismissed with prejudice; and (b) the Fourth Claim (inverse condemnation) had been transferred to the United States Court of Claims. *See* Doc. 948 in 1:91-cv-00048 at 42. A September 30, 2011 Memorandum Decision and separate Order resolved the Fifth Claim, denying Plaintiffs' motion for summary judgment and granting Federal Defendants and District Defendants' cross-motions on the APA claim, whether based upon 5 U.S.C. § 706(1) (permitting a court to compel agency action unlawfully withheld) or § 706(2) (permitting a court to set aside agency action that is arbitrary, capricious an abuse of discretion, or otherwise not in accordance with law). The ruling was without prejudice to Plaintiffs' bringing a renewed § 706(1) claim based on future circumstances. Docs. 916 & 917. Finally, On January 19, 2012, the Sixth Claim was dismissed as moot. Doc. 934. Plaintiffs' appeal from the district court's rulings on the nuisance and APA claims is proceeding. *See* Docs. 923 & 935.

Federal Defendants now move for entry of final judgment pursuant to Fed. R. Civ. P. 58(a) on the Second Phase claims in the Fifth Amended Complaint. Doc. 937. Federal Defendants argue that a

3

final judgment which merges all prior rulings <u>on the Fifth Amended Complaint</u> (not on all claims in the case)³ will not prejudice any party, will not disrupt the appellate proceedings, and will "simplify and clarify references to those rulings in further proceedings, including the appeal." *Id*. Environmental Intervenors, Contra Costa County, Contra Costa Water Agency, The Bay Institute, and the Natural Resources Defense Council, filed a statement of non-opposition, Doc. 938, as did Non-Federal Defendants, Westlands Water District, Panoche Water District, and Panoche Drainage District, Docs. 939. Plaintiffs raise objections, which are discussed below. Doc. 940. Federal Defendants replied. Doc. 941. The motion was originally set for hearing on March 6, 2012, but the hearing was vacated and the matter submitted for decision on the papers.

Plaintiffs' first objection is not really an objection to entry of judgment. Rather, Plaintiffs point out, correctly, that the district court reserved jurisdiction in the 1995 Partial Judgment and 2000 Order amending that Partial Judgment to monitor compliance with its orders regarding the First Phase claims. This reservation of jurisdiction will not be modified or impliedly withdrawn by entry of final judgment on the Second Phase claims in the Fifth Amended Complaint. The Court will continue to monitor compliance under the 1995 and 2000 reservations of jurisdiction.

Plaintiffs advance several other reasons why entry of final judgment on the Second Phase claims should be delayed. Plaintiffs argue that the September 30, 2011 Memorandum Decision and related Order, Docs. 916 and 917, evidence an "intention that the Court retain jurisdiction to enforce drainage which is still not provided and that those orders not bar renewed claims." Doc 940 at 3. Plaintiffs stretch the scope of the September 30, 2011 Decision and Order. Neither suggests that retaining jurisdiction over any Second Phase claim would be appropriate. Plaintiffs are correct that the September 30, 2011 rulings denied Plaintiffs' motion for summary judgment on the Second Phase APA § 706(1)

---

³ Plaintiffs appear to be confused about the request before the Court. No party is requesting that final judgment be entered as to all claims ever filed in this case. As already noted, there is need to enter final judgment on the claims tried in the First Phase, as that has already been done in accordance with Rule 54.

4

unreasonable delay claim and granted Federal Defendants' and SLU Defendants' cross motions on the same claim "without prejudice to a renewed claim based on future circumstances." Doc. 916. However, such a finding does not open the door to retaining jurisdiction over that Second Phase claim. Rather, this language simply clarifies that the ruling would not operate to bar Plaintiffs from filing an <u>entirely new</u> APA § 706(1) claim based upon future circumstances. Retention of jurisdiction to enforce the first phase Partial Judgment issued in 1995 and amended in 2000 should not be confused with any intention to retain jurisdiction over any Second Phase claims in Plaintiffs' Fifth Amended Complaint, which have been resolved in Defendants' favor.

Finally, Plaintiffs suggest that any judgment entered should clarify issues related to Plaintiffs' entitlement to attorneys fees and costs under 28 U.S.C. 2412(d), which, among other things, requires a "party seeking an award of fees and other expenses" to submit an application for the same "within thirty days of final judgment in the action." This thirty-day period does not begin to run until the time for appeal, including appeal to the Supreme Court, has expired. *See Li v. Keisler*, 505 F.3d 913, 917 (9th Cir. 2007). Specifically, Plaintiffs request that if the Court were to enter judgment as to the Second Phase claims, the "Judgment should invite immediate resolution of the issues regarding award of attorneys fees in the First Phase proceedings and appeal in order that Federal Defendants may not contend that the 30 day time to apply for attorneys fees and expert costs lapsed in 2000." Doc. 940 at 4. This is putting the cart before the horse. Whether and on what date any First Phase partial final judgment triggered the thirty-day deadline has not been briefed and is more appropriately addressed to the Court as part of a motion for attorney's fees and costs.[4]

---

[4] Plaintiffs suggest, without any support, that the Court could now enter final judgment as to "all phases of this action," and that his might somehow alter application of 28 U.S.C. 2412(d)'s 30-day deadline. Plaintiffs offer no authority to suggest the Court can re-enter judgment on claims for which partial final judgment has already been entered. Even if this were possible, it seems unlikely that any such re-entry of judgment would extend the 30-day deadline with respect to the First Phase claims. *See Atchison, Topeka & Santa Fe Ry. Co. v. Cal. Sate Bd of Equalization*, 102 F.3d 425, 427 (9th Cir. 1996) (for purposes of 30-day deadline for filing notice of appeal, the original partial judgment sets the deadline unless a modified judgment "adversely affect[s] the appellant in a material manner"). The Court expresses no opinion as to whether Plaintiffs are entitled to attorney's fees or costs as to any claims in this case, as no such issue has yet been presented.

5

Accordingly, Federal Defendants' motion for entry of final judgment on the Second Phase claims is GRANTED.  Federal Defendants shall submit a proposed form of judgment consistent with this memorandum decision and addressing any claims on which judgment has not yet been entered within ten (10) days of electronic filing of this order.

**SO ORDERED**
**Dated: March 12, 2012**

                                       **/s/ Lawrence J. O'Neill**
                                       **United States District Judge**