UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIREBAUGH CANAL WATER DISTRICT and CENTRAL CALIFORNIA IRRIGATION DISTRICT,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants, and<br><br>WESTLANDS WATER DISTRICT,<br><br>Defendants-in-Intervention. | 1:88-cv-00634 LJO DLB<br>1:91-cv-00048 LJO DLB<br>(Partially Consolidated)<br><br>MEMORANDUM DECISION DENYING FIREBAUGH PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, EXPERT WITNESS FEES, AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT (DOCS 949, 952) |

## I. INTRODUCTION

These consolidated cases concern a long-standing dispute over the provision of drainage to landowners on the west side of California's San Joaquin Valley. Upslope landowners and recipients of water from the San Luis Unit ("SLU") of the Central Valley Project ("CVP") claimed Section 1(a) of the San Luis Act (the "Act"), P.L. 86-488, 74 Stat. 156, obligated Federal Defendants to construct the "San Luis Drain" called for in the Act. Firebaugh Canal Water District ("Firebaugh") and Central California Irrigation District ("CCID") (collectively, "Firebaugh Plaintiffs"), which represented downslope landowners outside the SLU service area, alleged, among other things, that Federal Defendants' should not be permitted to provide irrigation water to the SLU unless and until drainage was provided. Doc. 1 at ¶¶ 36-39.

Before the Court for decision is Firebaugh Plaintiffs' application for an award of attorneys fees, expert witness fees, and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Doc. 949-52. Federal Defendants oppose on the grounds that (1) the application is untimely; (2) Firebaugh

Plaintiffs are not prevailing parties; and (3) applicants do not meet the statutory requirements. Doc. 954. In the alternative, if the Court is inclined to grant the application, Federal Defendants maintain the award should be reduced in various ways. *Id.* Plaintiffs replied. Doc. 956. The application was set for hearing on May 17, 2012, but the hearing was vacated and the matter submitted for decision on the papers. Doc. 957.

## II. BACKGROUND/PROCEDURAL HISTORY

### A. Origins of the San Luis Unit and the Drainage Dispute.

The 1960 San Luis Act provided for the construction and operation of the SLU and associated drainage facilities:

> The principal engineering features of said unit shall be a dam and reservoir at or near the San Luis site … drains, channels, levees, flood works, and related facilities…. Construction of the San Luis unit shall not be commenced until the Secretary has… (2) … made provision for constructing the San Luis interceptor drain to the delta designed to meet the drainage requirements of the San Luis unit as generally outlined in the report of the Department of the Interior, entitled "San Luis Unit, Central Valley Project," dated December 17, 1956.

Pub. L. No. 86-488, 74 Stat. 156. Even at that time, it was well understood that when irrigation water was applied to the SLU lands, saline drainage would be produced and that "it would be necessary to provide facilities for disposing of these waters." Supplemental Administrative Record ("SAR"), Document 815 at Bates # 38846 (Doc. 767).

In 1963, Firebaugh and CCID sought an injunction in federal court to prevent delivery of water to the SLU until drainage had been provided. Then-presiding District Judge Crocker entered an order finding that the San Luis Act "clearly requires a drainage system to protect plaintiffs' land and must be complied with and drainage provided before water is delivered to and stored in the San Luis Dam," but that the evidence then before the Court "indicates that the Secretary of the Interior has made provision for constructing the interceptor drain required by the [San Luis Act], and will have it completed by the time water is furnished to the [SLU]." Doc. 950, Ex. A (Bates # 39366). Accordingly, Judge Crocker

denied the request for injunctive relief. *Id*. at Bates # 39367.

The Bureau of Reclamation ("Reclamation") commenced construction of the San Luis Drain, originally designed to transport drainage water from the SLU north toward the Sacramento-San Joaquin Delta ("Delta"). However, construction stopped in 1975, with the drain only reaching as far as Kesterson Reservoir, approximately 18 miles north of Los Banos, California, and approximately 60 miles south of the Drain's originally-planned terminus in the Delta. *See* Doc. 954, Ex. 3 (Doc. 379 (Amended Complaint)) at ¶¶ 26-30. In 1976, Reclamation began construction of a drainage collection system designed to collect subsurface drainage water from farmland in Westlands Water District ("Westlands"), one of the Districts in the SLU, and to carry the drainage to the San Luis Drain. *Id*. at ¶ 30. Flow of drainage to Kesterson began in 1980, but was halted in 1985 when it was discovered that, among other things, the young of wildlife residing in Kesterson were suffering from deformities caused by high concentrations of selenium concentrating in the Reservoir. *See id*. at ¶ 34 (citing State Water Resources Control Board Water Quality Order 85-1). In March of 1985, Reclamation announced it would take steps to close Kesterson. *Id*. The subsurface collection system was also plugged in 1985. *Id*. at ¶ 35.

In 1988, Firebaugh and CCID filed a complaint for damages and injunctive relief against the United States. Doc. 1. The original complaint alleged (1) continuing negligence; (2) continuing nuisance; (3) continuing trespass; and (4) a violation of the Administrative Procedure Act ("APA"), alleging that Reclamation's delivery of irrigation water to the SLU in the absence of drainage violated the San Luis Act. Firebaugh Plaintiffs sought to recover damages in tort and requested an injunction directing Reclamation to cease water deliveries to the SLU until adequate drainage facilities were in operation. *Id*. at p. 16. Westlands intervened as a defendant in the *Firebaugh* suit by stipulation of all parties. Doc. 21 (filed Apr. 25 1990).

In 1991, a group of landowners within the boundaries of Westlands, the "Sumner Peck Plaintiffs," sued the United States and Westlands for the government's failure to provide statutorily

3

required drainage service, and for Westlands' failure to provide water service in a way that did not damage the Sumner Peck Plaintiffs' lands.

On May 26, 1992, the Court partially consolidated the Firebaugh (1:88-cv-00624) and Sumner Peck (1:91-cv-00048) cases "for purposes of determining the obligation imposed by the San Luis Act…. on the United States Department of the Interior, Bureau of Reclamation, to provide drainage service." Doc. 954, Ex. 1.

### B. Phase I Motion for Partial Summary Judgment, Trial & Partial Judgment.

Both sets of plaintiffs moved for partial summary judgment as to Reclamation's drainage obligations under the San Luis Act. The Sumner Peck Plaintiffs sought only a declaration that the San Luis Act required Reclamation to construct the San Luis Drain and a drainage collector system. The Firebaugh Plaintiffs sought a declaration that the Act required Reclamation to provide drainage as a condition to supplying irrigation water to Westlands and that continuing to deliver water to the SLU without drainage violated the APA. The Firebaugh Plaintiffs further sought an injunction suspending delivery of irrigation water to Westlands' lands until adequate drainage facilities were in operation. See Doc. 954, Ex. 2 (May 17, 1993 Decision), at 2-3; *see also* Doc. 192. On May 14, 1993, the Court granted the Sumner Peck Plaintiffs' motion as to the drainage obligation under the San Luis Act, but denied the Firebaugh Plaintiffs' motion in its entirety, finding that the San Luis Act does not require the provision of drainage as a precondition of Reclamation's delivery of irrigation water. *Id*. at 17, 21 & n. 12, 22.

In granting the Sumner Peck Plaintiffs' motion for partial summary judgment, one issue remained to be determined: "whether the Secretary's statutory duty has been excused, and if not, how the duty can be performed." *Id*. at 22. The Court conducted a trial in 1994 to address whether the government's drainage obligation had been excused by reason of impossibility, supervening illegality, implied repeal, or other reason. Docs. 381-82, 385-86, 391-98, 416-17, 424. On the eve of trial, the

Firebaugh Plaintiffs filed a First Amended Complaint, re-alleging that the San Luis Act required the United States to have drainage facilities "in place and operating at all times when the United States is delivering agricultural water to the San Luis Unit and Broadview District lands which cause rising groundwater levels in Firebaugh and CCID or drain into those areas" and that the United States' failure to do so was arbitrary and capricious in violation of the APA. Doc. 954, Ex. 3 at ¶¶ 48-49; *see also* Doc. 379 ¶¶ 47-49.

While the Firebaugh Plaintiffs did join the claims of the Sumner Peck Plaintiffs and Westlands calling for completion of the San Luis Drain, Firebaugh Plaintiffs participation in the trial was limited to an argument that if the drain was ordered constructed, it should be designed with sufficient capacity to permit Firebaugh Plaintiffs to utilize it under a contract with Reclamation. *See* Doc. 473 at 6.

"Partial Judgment" was entered March 10, 1995 on the issues raised during the cross motions for summary judgment decided in 1993 and the 1994 trial. Doc. 954, Ex. 4 (Doc. 422 ) ("1995 Partial Judgment"). The 1995 Partial Judgment held that the San Luis Act obligated Federal Defendants to construct the San Luis Drain and the drainage collector system in Westlands and to provide necessary drains as engineering features of the San Luis Unit. *Id*. at 5. It further held that the drainage obligation had not been excused. *Id*. at 5-7. The 1995 Partial Judgment also recognized a need for drainage service in Firebaugh Plaintiffs' lands, and indicated that Section 5 of the San Luis Act authorizes the Secretary of the Interior to permit use of the San Luis Drain by other parties. *Id*. at 8. The district court made explicit findings under Rule 54, concluding these "right-to-drainage claims" were clearly separable from the remaining claims; there was no just reason for delay in the entry of judgment; and entry of judgment would aid in the expeditious resolution of the case. *Id*. at 4-5. Federal Defendants were ordered to "without delay, take such reasonable and necessary actions to promptly prepare, file, and pursue an application for a discharge permit for the San Luis Drain to comply with section 1(a) of the San Luis Act to provide drainage to the San Luis Unit." *Id*. at 11-12. The district court also specifically "reserve[d]

jurisdiction to enforce compliance with [its] order and to enable the parties to apply to this court for such other orders as may be necessary for the implementation of [the] judgment." *Id*. at 12.

## C. Appeal from the 1995 Partial Judgment.

Federal Defendants appealed.[1] Briefing on the appeal was stayed more than a year while a Ninth Circuit mediator worked with the parties in an effort to reach a settlement. *See* Doc. 954, Ex. 5 (Doc. 504), at 3. While the mediation process was underway, Firebaugh Plaintiffs filed a motion seeking to amend the May 17, 1993 Decision denying Firebaugh Plaintiffs' motion for partial summary judgment. *Id*. at 2. Firebaugh Plaintiffs argued that the May 17, 1993 Decision actually granted in part and denied in part their summary judgment motion. *Id*. The Court disagreed:

> Federal Defendants argued that the Court properly denied Firebaugh Plaintiffs' entire summary judgment motion because the Firebaugh Plaintiffs never sought to compel completion of the San Luis Drain, either in their complaint or in their motion for summary judgment. The Federal Defendants are correct. The Firebaugh Plaintiffs argued in their summary judgment motion that the Bureau should be enjoined from delivering water to the San Luis Unit until drainage is provided. The Firebaugh Plaintiffs' motion was denied because drainage was not found to be a precondition to water delivery, which was the basis for the Firebaugh Plaintiffs' fourth cause of action and their summary judgment motion.
>
> The Firebaugh Plaintiffs did not advance a separate claim that the [San Luis] Act requires drainage. Their first claim sought damages for negligence. Their second claim sought an injunction to restrain a continuing nuisance. The third claim sought damages for continuing trespass. Their fourth cause of action asserted that the "defendants are required to have drainage facilities in place and operating prior to and at all times that the United States is delivering agricultural water." This claim asserts that the drainage problem is directly tied to the defendants' ability to deliver water. The essence of the Firebaugh Plaintiffs' claim was damage to their farmlands resulting from the absence of drainage. The Firebaugh Plaintiffs sought an injunction to stop San Luis water delivery until adequate drainage facilities are in place and operating. Presumably the Firebaugh Plaintiffs, who are not San Luis Unit members, would be satisfied if no water was delivered to the San Luis Unit. Other plaintiffs were more directly concerned with establishing the drainage obligation for the San Luis Unit. The Firebaugh Plaintiffs may not prevail on summary judgment on a claim they did not advance.

---

[1] On April 18, 1995, all parties stipulated that "the issue of statutory interpretation of the San Luis Act as it pertains to the United States' obligation to provide drainage <u>as a precondition</u> to the delivery of water to the lands served by the San Luis Unit of the Central Valley Project," a issue on which Federal Defendants prevailed over Firebaugh Plaintiffs on summary judgment, "may be reserved for appeal after the resolution of all other issues in the case." Doc. 456 at 5 (emphasis in original).

> The Firebaugh Plaintiffs' motion was properly denied. The Firebaugh Plaintiffs are in a different posture from members of the San Luis Unit. They may or may not, as nonmembers of the San Luis Unit, be entitled to enforce and obtain drainage under section 1a of the San Luis Act. This question has not been decided and cannot be decided before the next phase of the litigation.

*Id.* at 7-8.

### D.     First Fee Petitions & Bills of Costs.

On May 16, 1995, Firebaugh Plaintiffs petitioned for an award under the EAJA attorney's fees in the amount of $312,366.87 and expert witness fees of $58,307.87, arguing that their lawsuit was the catalyst for the finding that the United States had an obligation to provide drainage to the SLU. Doc. 950, Ex. B. Sumner Peck Plaintiffs also filed a fees and costs petition. Doc. 464. Federal Defendants opposed the motions, arguing, among other things, that it was not appropriate to decide any fee petition based upon claims that were on appeal. Federal Defendants also maintained that Firebaugh Plaintiffs were not prevailing parties. Doc. 473. The district court indicated its agreement with Federal Defendants at the hearing on the petitions. Thereafter Plaintiffs' withdrew their motions without prejudice. *See* Doc. 950, Ex. C at 16.

The Sumner Peck Plaintiffs, the Firebaugh Plaintiffs, and Westlands also filed bills of costs. Docs. 446, 448, 468. Those were addressed in August 9, 1995 memorandum opinion and order. Sumner Peck's and Westlands' bills of cost were granted, subject to some minor deductions. The Firebaugh Plaintiffs sought to recover $23,235.45 in costs associated with the first-phase trial. Federal Defendants objected: "Firebaugh was in essence an observer at the first-phase trial. On the sole issue on which Firebaugh presented testimony – the amount of the likely drainage effluent and hence the size of the drain that was necessary – Firebaugh's interests were in accord with those of the United States." Doc. 950, Ex. C at 9. The district court reasoned:

> The main issue of the first-phase trial was whether the Federal Defendants' statutory duty to provide drainage for Westlands was excused. Firebaugh and CCID filed suit against

7

> the Federal Defendants because the absence of drainage in Westlands allegedly adversely impacted the lands of Firebaugh and CCID. Counsel for Firebaugh and CCID participated in the first-phase trial and had interests to protect, but these interests were virtually identical to the interests of Westlands and the Sumner Peck Plaintiffs: to show that the Federal Defendants' statutory obligation to provide drainage was not excused by legal or factual impossibility. Counsel for Westlands and for the Sumner Peck Plaintiffs presented the majority of the evidence for plaintiffs. Firebaugh and CCID have not yet established an entitlement to drainage that is not acknowledged by the Bureau, if there is a duty to provide drainage to the San Luis Unit, under the San Luis Act. This issue is reserved for a later phase of trial. Under the posture of this litigation, it was not necessary for Firebaugh and CCID to fully participate in the first phase of the trial. In the exercise of the Court's discretion, the award of costs to Firebaugh and CCID for the first-phase is reduced 50%.

*Id*. at 9-10.[2] Firebaugh recovered $4,204.77. Doc. 486.

### E. **Firebaugh Plaintiffs' Settlement of Second Phase Claims.**

The Firebaugh Plaintiffs subsequently moved to dismiss their "second phase" claims without prejudice under the terms of a stipulation and settlement agreement with Westlands and others[3], but not the United States. In an Order For Dismissal Without Prejudice filed April 27, 1999, the Court granted the motion and dismissed Case No. 88-cv-634 without prejudice. Doc. 605. That Order noted: "[t]hat portion of the case which remains pending before the Ninth Circuit Court of Appeals (the obligation of the United States to provide drainage service to the San Luis Unit pursuant to section 1(a) of the San Luis Act) is not dismissed." *Id*. at 2-3. It was further ordered that "[d]uring the terms of the Settlement Agreement, any limitation periods applicable to drainage related claims which now exist or may arise during the term of the Settlement Agreement are tolled." *Id*. at 3.

---

[2] Fed. R. Civ. P. 54(d) provides that costs should be awarded to the "prevailing party." It could be argued that this language supports a finding that Firebaugh was a "prevailing party" in the first phase of this case for the purposes of the EAJA. This language must be viewed in context. In light of the Court's May 17, 1993 Decision denying Firebaugh Plaintiffs' motion to amend the judgment (see previous section), which clearly indicated that Firebaugh Plaintiffs did not prevail on the merits of their claims in the first phase, the language in the cost award must be narrowly construed as acknowledging only that Firebaugh Plaintiffs "prevailed" as to the minor issue they presented at trial, entitling them to a small costs award.

[3] The Settlement was signed by representatives from CCID, Firebaugh, Broadview Water District, Panoche Water District, Westlands Water District and San Joaquin River Exchange Contractors Water Authoirty. On March 26, 1997, Broadview, Panoche and San Luis Water District were added as indispensable parties. Doc. 557

F.    **Ninth Circuit Remand on Phase I Issues.**

On February 4, 2000, the Ninth Circuit affirmed in part and reversed in part the 1995 Partial Judgment, concluding that although there was a drainage duty, Federal Defendants must be afforded discretion to determine how drainage service is to be provided. *Firebaugh Canal Co. v. United States*, 203 F.3d 568 (9th Cir. 2000). After remand, on December 18, 2000, the Partial Judgment was modified to reflect the Ninth Circuit's ruling, and Federal Defendants were instead ordered to "without delay, provide drainage to the San Luis Unit pursuant to the statutory duty imposed by section 1(a) of the San Luis Act." Doc. 654 at 4. Federal Defendants were further ordered to submit "a detailed plan describing the action or actions, whether short term or long term, they will take to promptly provide drainage to the San Luis Unit, which plan shall contain a schedule of dates by which the action or actions described in the plan will be accomplished." *Id*. at 4. The district court again "reserve[d] jurisdiction to enforce the provisions of the Partial judgment. *Id*. Pursuant to this authority, the district court has been receiving periodic status reports from the parties, both leading up to and following the issuance by Federal Defendants of a Record of Decision regarding the provision of drainage.

G.    **Renewal of Fee Petition By Sumner Peck Plaintiffs.**

On July 21, 2000, after the period for seeking a writ of certiorari on the Ninth Circuit's ruling on the Phase I appeal expired, the district court issued a scheduling order directing that "[a]ny party shall, if it elects, file supplemental papers concerning requests for attorney's fees under the Equal Access to Justice Act by September 11, 2000." Doc. 616 at 3. The Sumner Peck Plaintiffs complied with the order, filing an application, which was addressed by the Court in early 2001.

H.    **Phase II.**

In 2003, the Firebaugh Plaintiffs filed a Third Amended Complaint, which the United States moved to dismiss. The district court denied the motion without prejudice and reiterated that the Firebaugh Plaintiffs' claim regarding a statutory drainage duty remained undecided. Doc. 826 at 18 ("At

9

no point in this suit, including the appeal, has the issue of Firebaugh plaintiffs' ability '<u>to enforce and obtain drainage under section (1a) [sic] of the San Luis Act</u>,' or their ability to obtain damages for the lack of drainage, been decided or dismissed." (emphasis in original)). The Court explained that the dismissal of the Firebaugh Plaintiffs' claims in 1999 did not encompass claims "for the United States' potential liability to Firebaugh plaintiffs on the drainage issue." *Id*. at 19. "That portion of Firebaugh plaintiffs' claim, as to federal defendants only, was tolled throughout the appeal to the Ninth Circuit. It has not since been addressed." *Id*. Accordingly, Firebaugh Plaintiffs were permitted to proceed on those claims.

The remaining "Second Phase" claims brought by the Firebaugh Plaintiffs were resolved in a series of orders. Firebaugh Plaintiffs' Fifth Amended Complaint, filed June 1, 2004, contains a total of six claims. *See* Doc. 930 in 1:91-cv-00048. By November 2004: (a) the First (continuing negligence), Second (continuing nuisance), and Third (continuing trespass) Claims had been dismissed with prejudice; and (b) the Fourth Claim (inverse condemnation) had been transferred to the United States Court of Claims. *See* Doc. 948 in 1:91-cv-00048 at 42. A September 30, 2011 Memorandum Decision and separate Order resolved the Fifth Claim, denying Firebaugh Plaintiffs' motion for summary judgment and granting Federal Defendants and other water district Defendants' cross-motions on the APA claim, whether based upon 5 U.S.C. § 706(1) (permitting a court to compel agency action unlawfully withheld) or § 706(2) (permitting a court to set aside agency action that is arbitrary, capricious an abuse of discretion, or otherwise not in accordance with law). The ruling was without prejudice to Plaintiffs' bringing a renewed § 706(1) claim based on future circumstances. Docs. 916 & 917. Finally, On January 19, 2012, the Sixth Claim was dismissed as moot. Doc. 934. Firebaugh Plaintiffs' appeal from the district court's rulings on the nuisance and APA claims is proceeding. *See* Docs. 923 & 935. Final judgment was entered on the Second Phase claims on March 19, 2012.

10

# III. ANALYSIS

Firebaugh Plaintiffs "renew" their request for attorney's fees and costs pursuant to the EAJA's discretionary, 28 U.S.C. § 2412(b), and/or mandatory award provisions, § 2412(d). They only seek fees for their participation in the Phase I proceedings, admitting that they have not had success in Phase II.

### A.     Mandatory Award Request.

28 U.S.C § 2412(d)(1)(A) directs that courts "<u>shall</u> award to a prevailing party ... fees and other expenses ... incurred by that party." (Emphasis added.) The Supreme Court has "long held that the term 'prevailing party' in fee statutes is a 'term of art' that refers to the prevailing litigant." *Astrue v. Ratliff*, 130 S. Ct. 2521, 2525-26 (2010). "Once a party's eligibility has been proven, an award of fees is <u>mandatory</u> under the EAJA unless the government's position is substantially justified or special circumstances exist that make an award of fees unjust." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991) (citing 28 U.S.C. § 2412(d)(1)(A))(emphasis added).

#### 1.     Net Worth Requirements.

To be eligible for a mandatory fee award, a party must be an "owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed...." 28 U.S.C. § 2412(d)(2)(B)(ii).

It is undisputed that CCID does not meet the net worth requirements. CCID concedes it had a net worth of more than seven million dollars ($7,000,000) at the time the complaint was filed in 1988. Doc. 950 at 7.[4]

Firebaugh maintains that it met the worth requirements at the time this lawsuit was filed. In

---

[4] CCID explains that under California law, an irrigation district holds the value of its waterworks in trust for its landowner members, implying without establishing that the only reason CCID's net worth exceeded $7,000,000 was because of the value of its own waterworks. Doc. 950 at 7 n.1. CCID indicates that whether this fact disqualifies an irrigation district from coverage under 2412(d) has never been addressed. *Id*. However, CCID makes no argument and provides no authority to support a finding that CCID should not be disqualified from EAJA mandatory awards based upon the net worth requirement.

11

support of this assertion, Firebaugh submits a copy of a declaration submitted by counsel, Michael Sexton, in support of the June 1995 fee petition. Doc. 951 at Ex. B. In that Declaration, Mr. Sexton stated:

> Firebaugh Canal Water District had, at the time this action was filed in 1988, a net worth of less than $7,000,000 and employed less than 500 people. An independent audit establishing the net worth in 1988 is attached as Exhibit C.'

*Id.* at ¶ 6. Federal Defendants object that Mr. Sexton did not have direct knowledge of Firebaugh's net worth. Doc. 954 at 19. In response, CCID suggests that the court take judicial notice of the audit referenced in Mr. Sexton's Declaration, the creation of which was required by California Government Code § 26909. Doc. 956 at 8. Although the Court may take judicial notice of this document as a "public record," doing so would not permit consideration of net worth of CCID described in that audit. Documents are generally not judicially noticeable for the truth of their content. *See Lee v. City of Los Angeles*, 25 F.3d 668, 690 (9th Cir. 2001)(when court takes judicial notice of a document it is "not of the truth of the facts recited therein, but for the existence of the [document], which is not subject to reasonable dispute over its authenticity").

The content of the audit may nevertheless be admissible under the hearsay exception applicable to "[a] record or statement of a public office [that] sets out ... a matter observed while under a legal duty to report ... [so long as] neither the source of information nor other circumstances indicate a lack of trustworthiness." Federal Rule of Evidence § 803(8)(A)(ii) & (B). However, the document has not been properly authenticated, preventing its admission under this exception. Although Federal Rule of Evidence 901(7) does not require a declarant offering a public record to have "personal knowledge of a document's creation," it does demand the declarant have "personal knowledge that a document was part of an official file." *United States v. Estrada–Eliverio*, 583 F.3d 669, 673 (9th Cir. 2009). Firebaugh has provided no such authentication.

Accordingly, neither Plaintiff has established eligibility for fees under 28 U.S.C. 2412(d).

### 2. **Timeliness of Mandatory Fee Petition.**

Even if Firebaugh had established its net worth did not disqualify it from eligibility for fees under § 2412(d), its application is untimely. A party seeking attorney's fees under the EAJA's mandatory fee provision must file an application within thirty days of "final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). "The 30-day EAJA clock begins to run after the time to appeal that 'final judgment' has expired." *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991).

Calculating the date on which the thirty-day window began to run in this case is complicated by the bifurcated judgment. The EAJA defines "final judgment" as "a judgment that is final and not appealable, and includes an order of settlement." 28 U.S.C. § 2412(d)(2)(G). The term "final judgment" in the EAJA is "defined by its common usage in contexts such as Federal Rule of Civil Procedure 54." *Auke Bay Concerned Citizen's Advisory Council v. Marsh*, 779 F.2d 1391, 1392 (9th Cir. 1986). In *Melka Marine, Inc., v. United States*, 29 F. App'x 594, 597 (Fed. Cir. 2002), the Federal Circuit explained: "[A] judgment must meet two requirements before an EAJA fee application can be filed: finality and non-appealability." Although normally a final judgment is "one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment ... an important exception to that general rule is found in Fed. R. Civ. P. 54(b), which permits an appeal from a partial judgment if certified for appeal by the trial court." *Id*. A November 2000 judgment in *Melka Marine* decided a single claim, leaving the remaining claims for later resolution. *Id*. However, the Court of Federal Claims did <u>not</u> issue a Rule 54(b) certification as to the claim decided by the November 2000 judgment. Accordingly, that judgment was not a final disposition triggering the EAJA's 30-day deadline. *Id*.

In contrast, here, the district court specifically entered Rule 54(b) findings in connection with the March 10, 1995 judgment, which resolved the statutory right to drainage claims, the only claims on which any Plaintiff could even arguably contend to be a prevailing party. Firebaugh Plaintiffs' suggestion that the district court never entered a Rule 54(b) order, Doc. 950 at 10, is contradicted by

express language in the record. Doc. 442 at 3-5. For any claims subject to the Rule 54(b) partial judgment, the § 2412(d)'s filing window would have expired 30 days after the time to appeal those claims expired. The Ninth Circuit issued its decision on February 4, 2000. Thereafter, over the course of several months, the parties moved to modify both the 1995 partial judgment and the injunction it imposed. On December 18, 2000, the district court <u>modified</u> the Partial Judgment, replacing certain language in the 1995 order that did not comport with the Ninth Circuit's ruling. The Rule 54(b) finding was not modified or altered. Doc. 654. This operated to renew the Rule 54(b) partial final judgment as of December 18, 2000. No further appeals were sought, triggering the running of the EAJA's thirty-day window at some point in 2001.[5] Presumably in light of the Ninth Circuit's ruling, on July 21, 2000, the district court issued a scheduling order directing that "[a]ny party shall, if it elects, file supplemental papers concerning requests for attorney's fees under the Equal Access to Justice Act by September 11, 2000." Doc. 616 at 3.[6]

Firebaugh Plaintiffs maintain they were not bound by either the standard EAJA deadline calculation or the Scheduling Order's deadline because of tolling language contained within the 1999 Settlement. The Settlement was signed by CCID, Firebaugh, Broadview Water District, Panoche Water District, Westlands Water District, and San Joaquin River Exchange Contractors Water Authority, <u>but not the Federal Defendants</u>. *See* Doc. 605 at p. 7 of 20 (list of settling parties). It sought dismissal of

---

[5] Firebaugh Plaintiffs' suggestion that "final judgment" was not entered after the 2000 Partial Judgment and that the true "final judgment" was not entered until March 19, 2012 is misplaced. The December 18, 2000 Partial Judgment following the Ninth Circuit's decision simply modified the March 10, 1995 Partial Judgment, which itself contained a Rule 54(b) certification. The December 18, 2000 Partial Judgment was both final and appealable. The modified Partial judgment was rendered non-appealable when the time to appeal it expired. For the purposes of the EAJA, the time to file a mandatory fee petition expired some time in 2001.

[6] Firebaugh Plaintiffs suggest that this Scheduling Order was not directed at them because it bore only the title of the *Sumner Peck* case. It is not clear whether the district court deliberately excluded the Firebaugh Plaintiffs' from coverage under the scheduling order, perhaps because the remaining claims of the Firebaugh Plaintiffs had been settled. Although the *Firebaugh* title was not included, the caption clearly referred to "CIV-F-91-048 OWW [¶] Partially Consolidated with [¶] No. CV-F-88-634 OWW." Doc. 616. Moreover, the Scheduling Order clearly indicated that counsel for Firebaugh and CCID made appearances at the Scheduling Conference that resulted in the Order, as did Steve Chedester, Manager of Firebaugh. *See id*. at 6. However, in an abundance of caution, because it is unclear whether the Scheduling Order was intended to apply to Firebaugh Plaintiffs, the timeliness issue will be decided without construing the Order as imposing a deadline upon Firebaugh Plaintiffs.

only second phase claims, acknowledging that the "portion of the case which remains pending before the Ninth Circuit Court of Appeals (the obligation of the United States to provide drainage service to the San Luis Unit pursuant to section 1(a) of the San Luis Act) is not dismissed." Doc. 605 at 2-3. The Settlement also stipulated "[d]uring the terms of the Settlement Agreement, any limitation periods applicable to drainage related claims which now exist or may arise during the term of the Settlement Agreement are tolled." *Id*. at 3. This was language requested by the settling parties. *See* Doc. 605 pages 9 of 20 (parties agree to request tolling language from the Court). Firebaugh Plaintiffs now suggest that this tolling language was intended to apply not only to the claims being settled and any other drainage claims between the settling parties, but also to the EAJA deadlines related to the first phase claims brought against the Federal Defendants.

This interpretation is problematic for several reasons. First, the tolling provision was requested as part of a settlement <u>that did not involve Federal Defendants</u>.[7] Although it is true that Federal Defendants did not object to the inclusion of this language in the April 27, 1999 Dismissal Order, no party has addressed whether it can lawfully be applied to toll deadlines that affect the liability of a non-party to the settlement. By its terms, it operates "during the term of the Settlement Agreement." A non-party would have no control over whether the Settlement Agreement was still in force and therefore would have no control over whether and/or when tolled claims could be asserted.

Even assuming, *arguendo*, that it is appropriate to apply the tolling provision to deadlines related to Firebaugh Plaintiffs' EAJA petition against Federal Defendants, when would the tolling period end? Firebaugh Plaintiffs seem to suggest that the triggering event was entry of final judgment on March 19, 2012. Doc. 954. But, as indicated in the memorandum decision issued in connection with Federal Defendants' request that the Court enter that final judgment, it operated only as final judgment on the

---

[7] The District Court previously mentioned this tolling provision in the May 7, 2003 Memorandum Decision and Order Re Federal Defendants' Motion to Dismiss Firebaugh Plaintiffs' Third Amended Complaint. The Court quoted the signatories' agreement to petition the court for an order providing that "any limitation period[s] applicable to this proceeding are tolled during the term of this Agreement," but did not specifically interpret that language. *See* Doc. 826 at 18.

15

second phase claims, <u>because final judgment on the first phase claims had been entered more than eleven years earlier</u>. *See* Doc. 943. The March 19, 2012 final judgment has absolutely nothing to do with the claims on which Firebaugh Plaintiffs' base their fee petition.

A more logical triggering event would have been Firebaugh Plaintiffs' re-initiation of proceedings against Federal Defendants on May 2003, when Firebaugh Plaintiffs filed their fourth amended complaint. At that time, a Rule 54(b) order had already been entered as to the claims in the first phase of the case. If the tolling provision applied to Federal Defendants at all, its operation terminated in 2003, causing the clock to begin to run then. Under such a scenario, the EAJA 30-day clock would have expired at some time in 2003. Firebaugh Plaintiffs have presented no plausible basis to conclude that the 30-day window would have been tolled until 2012.

Absent tolling, the EAJA 30-day deadline for mandatory fee awards expired in 2001, 30 days after the time to appeal the December 18, 2000 amended partial judgment expired.

Under any reasonable interpretation of the record, Firebaugh Plaintiffs' mandatory EAJA fee petition is untimely.

**B.     Discretionary Fee Request.**

Alternatively, 28 U.S.C. 2412(b) permits the court "unless expressly prohibited by statute," to award costs and attorneys fees "to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action."

**1.     Timeliness of Discretionary Fee Petition.**

Because the EAJA's discretionary fee award provision does not have a specific time restriction, the default rule in the Ninth Circuit is that a petition is timely if it is filed "within a reasonable period after entry of judgment and if it does not unfairly surprise or prejudice the affected party." *McQuiston v.*

16

*Marsh*, 702 F.2d 1082, 1084 (9th Cir. 1983), superseded by statute on other grounds as recognized by *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991). However, as subsequent cases have made clear, local rules trump the reasonableness standard of timeliness. *See Arulampalam v. Gonzales*, 399 F.3d 1087, 1091 (9th Cir. 2005) (applying Circuit Rule 39-1.6 to require filing of request for attorney's fees within 14 days of the Appeals Court's disposition of a petition for rehearing). Here, in the Eastern District of California, Local Rule 293(a) requires "motions for awards of attorneys' fees to prevailing parties pursuant to statute shall be filed not later than twenty-eight (28) days after entry of final judgment." This standard is effectively identical, if not more restrictive than 28 U.S.C. 2412(d)'s 30-day timeliness standard, in that our Local Rule arguably begins to run upon entry of judgment, not upon expiration of the time for appeal. The timeliness analysis reaches the same result for a discretionary fee petition. Under any reasonable interpretation of the record, the time for filing a fee petition in connection with the first phase judgment expired many years ago.

### 2. **Absence of Basis for Federal Defendants' Common Law or Statutory Liability**

Discretionary fee awards under 28 U.S.C. § 2412(b) are subject to an additional restriction. The United States is liable for such fees and expenses only "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." *Id*.

Federal Defendants argue that the Firebaugh Plaintiffs have not identified any statute that specifically provides for an award of attorney's fees under the present circumstances, nor can they identify any applicable common law exceptions to the default "American rule" that litigants are to bear their own expenses. Doc. 954 at 17. In response, Firebaugh Plaintiffs rely on "abundant authority" establishing that in common law actions involving trespass, awards of attorney's fees are permitted. Doc. 956 at 6. Firebaugh Plaintiffs are correct that under the common law, flow of water that damages others' lands can be considered a trespass and/or a nuisance. However, the claims on which Firebaugh

Plaintiffs' base their fee petition (i.e., the ones on which they claim to have prevailed) were entirely statutory, based upon the language in the San Luis Act and the APA. Firebaugh Plaintiffs have not pointed to any language in any decision in these cases that even remotely suggests they prevailed on a claim against the United States based upon common law nuisance or trespass, or even upon an analogue of such a common law claim. Firebaugh Plaintiffs cannot satisfy § 2412(b)'s requirement that they identify either a statute that specifically provides for an award of attorney's fees under the present circumstances or an applicable common law basis for an award of attorney's fees or costs.

### C.  Prevailing Party Status

Under either the discretionary or mandatory fee provisions of the EAJA, Firebaugh Plaintiffs must establish they are prevailing parties. Although the Court has serious doubts about the ability of Firebaugh Plaintiffs to establish prevailing party status, both Firebaugh Plaintiffs and Federal Defendants have pointed to record evidence supporting their contrary positions on this issue, leaving some room for debate on the matter. Resolving the matter would entail an in-depth examination of the merits of lengthy decisions reached more than a decade ago by another district judge. Because the motion can be decided on the alternative grounds discussed above, the Court declines to expend its scarce resources doing so.

## IV. CONCLUSION

For the reasons set forth above, Firebaugh Plaintiffs motion for attorney's fees, costs, and expenses under the EAJA is DENIED IN ITS ENTIRETY.

**SO ORDERED**
**Dated: June 19, 2012**

               **/s/ Lawrence J. O'Neill**
               **United States District Judge**