# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIREBAUGH CANAL WATER DISTRICT and CENTRAL CALIFORNIA IRRIGATION DISTRICT, <br><br>　　　　　　Plaintiffs, <br><br>v. <br><br>UNITED STATES OF AMERICA, *et al.*, <br><br>　　　　　　Defendants, and <br><br>WESTLANDS WATER DISTRICT, *et al.*, <br><br>　　　　　　Defendants-in-Intervention. | ) 1:88-cv-00634-LJO/DLB <br> ) 1:91-cv-00048-LJO/DLB <br> ) (Partially Consolidated) <br> ) <br> ) <br> ) **ORDER GRANTING** <br> ) **JOINT MOTION FOR** <br> ) **EXTENSION OF** <br> ) **PARTIAL STAY** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

　　　　The Court's Partial Judgment on Findings of Fact and Conclusions of Law Re: Statutory Duty, filed March 12, 1995, enjoined Federal Defendants to provide drainage to the San Luis Unit of the Central Valley Project to comply with Section 1(a) of the San Luis Act of 1960. ECF 442, at 11-12. The partial judgment further provided that "[t]his court reserves jurisdiction to enforce compliance with this order and to enable the parties to apply to this court for such other orders as may be necessary for the implementation of this judgment." ECF 442, at 12. The Order Modifying Partial Judgment On Findings of Fact and Conclusions of Law Re: Statutory Duty to Conform to Ninth Circuit Opinion, filed December 18, 2000 (ECF 654), reiterated that the "[t]he Court reserves jurisdiction to enforce the provisions of the Partial Judgment, as amended herein." ECF 654, at 5. In furtherance of the partial judgment, the Federal Defendants committed to begin implementation of a drainage plan selected in the 2007 San Luis Feature Re-Evaluation Record

of Decision ("2007 ROD") in accordance with a Control Schedule which the Court incorporated into a Scheduling Order in this case. *See* ECF 758. Among other things, the Scheduling Order provided that "[n]othing in this Order precludes the Federal Defendants from discussing with other Parties alternative means or locations of providing drainage service within the San Luis Unit." *Id*. at 2.

On September 16, 2015, Federal Defendants reported that the United States and Westlands had reached a settlement, and filed a Notice with the Court attaching a copy of the executed Settlement Agreement ("Settlement"). ECF 1001. The Settlement addresses the management of drainage within Westlands and settles litigation over drainage service between the United States and Westlands. Implementation of the Settlement will depend on the enactment of authorizing federal legislation. The United States and Westlands then jointly moved for a partial stay, until January 15, 2017, of Federal Defendants' compliance with the partial judgment and subsequent Orders in this case requiring them to implement drainage service within Westlands ("Joint Motion"), to allow for the introduction and enactment of authorizing legislation. The partial stay requested in the Joint Motion was limited geographically to Westlands; it did not request a stay regarding Federal Defendants' implementation of drainage service in other parts of the San Luis Unit. The partial stay requested was also limited temporally to the time between the date of filing and January 15, 2017, the date on which the Settlement becomes voidable if authorizing legislation is not enacted. Through the Joint Motion, the Federal Defendants and Westlands sought to limit the expenditure of federal appropriations on the implementation of the plan selected in the 2007 ROD within Westlands while Congress considered legislation that would authorize the Settlement and an approach to drainage service that may differ, and be less costly, than Federal Defendants' plan. Following responses from the Firebaugh Plaintiffs and Environmental Intervenors indicating no opposition to the partial stay as requested by the United States and Westlands, the Court issued a partial stay until January 15, 2017, "unless extended by further Order of this Court upon a noticed motion." ECF 1010.

The Federal Defendants and Westlands now jointly moved for a one-year extension of the partial stay, until January 15, 2018 ("Joint Motion"). The United States and Westlands report

1  that, although legislation to authorize the Settlement was introduced in the House of
2  Representatives in 2016, it was not enacted into law by January 15, 2017. Federal Defendants
3  and Westlands seek to renew their efforts to secure the enactment of legislation authorizing the
4  Settlement in the 115th Congress. To that end, Federal Defendants and Westlands report that they
5  have executed an Addendum to the Settlement, extending the date in Paragraph 10 therein until
6  January 15, 2018, after which the Settlement would become voidable unless authorizing
7  legislation is enacted. *See* Macfarlane Declaration Ex. 1. Federal Defendants and Westlands have
8  also submitted the declarations of Federico Barajas and Jose Gutierrez in support of their Joint
9  Motion.
10        The Court has considered the responses to the Joint Motion. Environmental Intervenors
11 do not oppose the Joint Motion, although they emphasize that their non-opposition does not
12 indicate "approval, consent or acquiescence" with respect to the Settlement itself, about which
13 they have identified various legal and policy concerns. ECF 1015, at 1.
14        However, Firebaugh Canal Water District and Central California Irrigation District
15 ("Plaintiffs"), do oppose the Joint Motion on two grounds. ECF 1016. First, Plaintiffs assert that,
16 by granting an extension of the stay, the Court would be agreeing impliedly that "there is no
17 continued movement of selenium, salinity and boron laced drainage water into [Plaintiffs']
18 service areas from Westlands which waters must be disposed of through" the Northerly
19 District's[1] Westside Regional Drainage Plan ("WRDP").[2] *Id*. at 2. Plaintiffs also object that this
20 requested stay, unlike previous requests, is made without any assurance that Reclamation will
21 continue to fund the WRDP during the stay period and thereafter, which is of particular concern

---

[1] The present Joint Motion concerns the Settlement between Federal Defendants and Westlands. Reclamation is also pursuing an "overall drainage solution for the Northerly Area" of the San Luis Unit ("SLU") of the Central Valley Project ("CVP"), involving Reclamation contractors whose districts are situated within the San Luis Unit of the federal Central Valley Project north of Westlands—the San Luis Water District, Panoche Water District, and Pacheco Water District—as well as the Panoche Drainage District (collectively referred to as the "Northerly Districts"). See ECF 1011, at 4.

[2] The WRDP "was developed in 2003 by several water agencies on the west side of the San Joaquin Valley to solve problems with agricultural drainage." Third Supplemental Declaration of David Murillo, ECF 974-1, at ¶ 5. "It is a critical component to help meet the federal government's obligation to provide drainage service to lands within the [SLU]." *Id*.

1  to Plaintiffs in light of the fact that all discharges to the San Joaquin River must terminate by
2  2019. *Id*.

   With respect to the first concern, Westlands has submitted evidence that appears to
4  demonstrate that an extension of the stay would not worsen "shallow groundwater conditions"
5  during the pendency of the stay. Specifically, Westlands' evidence suggests shallow groundwater
6  is not migrating from Westlands to areas outside of Westlands. *See* Declaration of Jose Gutierrez
7  ("Gutierrez Decl.") at ¶¶ 8-17. This may in part be due to the fact that irrigation no longer takes
8  place on nearly all lands within Westlands that border Plaintiffs' lands. *Id*. at ¶ 9. In addition,
9  other lands within Westlands have been fallowed in recent years. *Id*. at ¶ 11. Data compiled by
10 Westlands also shows that areas within Westlands with the worst "shallow groundwater"
11 problems are located away from Plaintiffs' lands, and that shallow groundwater issues have
12 diminished in fallowed lands. *Id*. at ¶ 12-13. Moreover, for shallow groundwater to "migrate
13 from irrigated land within Westlands into Firebaugh and other lands to the north, and thereby
14 increase drainage needs in those areas, that shallow groundwater would have to travel through
15 the retired lands to reach those areas in Firebaugh." *Id*. at ¶ 14. Yet "that is not what the data
16 indicate," given that "[g]roundwater levels near the boundary of Westlands have declined,"
17 indicating that "shallow groundwater is <u>not</u> moving from adjacent areas within Westlands that
18 are still irrigated to beneath the retired lands, and then to the areas served by the Grassland
19 Bypass Project." *Id.* (emphasis in original).

20   Plaintiffs submit evidence from a hydrogeologist, Ken Schmidt, who concedes that
21 "shallow water levels in Westlands which are measured above a depth of 20 to 30 feet below the
22 ground surface have fallen in recent years" as a result of "reduced irrigation due to land
23 retirement and in part as a result of drought conditions, water supply reductions for other
24 reasons, and because of improved water application methods to crops used by farmers irrigating
25 within the upslope areas of Westlands." Declaration of Kenneth Schmidt ("Schmidt Decl."), ECF
26 1018, at ¶ 7. Schmidt further concedes that the "amounts of new drainage waters reaching the
27 shallow groundwater within Westlands (0 to 30 feet) has declined because of [these] conditions."
28 *Id*. However, Schmidt points out that "drainage water reaching depths below about 30-40 feet

likely continues to move downslope within the deeper sand layers primarily between 30 and 100 feet in depth." *Id*. "This deeper drainage water placed into motion by past irrigation practices continues to migrate and is not evidenced or measured directly by measurement of shallow groundwater levels in wells less than 30 feet deep." *Id*.

Assuming for purposes of this motion the accuracy of Schmidt's conclusions, Plaintiffs are legitimately concerned over this deeper migration of potentially tainted water set into motion by historic irrigation practices. However, the Court agrees with the moving parties that the evidence presented by Plaintiffs does not suggest any mechanism by which Plaintiffs could be harmed by a one-year extension of a stay applicable to Westlands, as there is no information indicating that <u>current</u> irrigation practices within Westlands will exacerbate the deeper migration problem.

Plaintiffs' second concern is that this stay, unlike previous requests, is requested without any assurance that Reclamation will continue to fund the WRDP during the stay period and thereafter. Plaintiffs contend that "drainage is a regional problem," ECF 1016, at 3, and express concern that funding for WRDP may not meet increasing demands placed upon WRDP facilities. <u>See id</u>. at 3-4, 7. However, Plaintiffs again fail to connect this concern to the Joint Motion for the same reasons discussed above, namely, that the record does not suggest how the stay proposed in the Joint Motion will impact demands on the WRDP. That said, Plaintiffs have the Court's attention. The Court will carefully examine the April 2017 status report promised by Federal Defendants—a status report that presumably will address directly the Northerly Area and the WRDP—with Plaintiffs' concerns in mind.

Accordingly, having reviewed all papers submitted with regard to the Joint Motion for Extension of Partial Stay, the Court is satisfied that a one-year extension of the partial stay previously issued, as requested by Federal Defendants and Westlands, will not harm the public interest and serves the interests of judicial and Party economy. Therefore, IT IS HEREBY ORDERED that the Joint Motion for an Extension of Partial Stay is GRANTED, and that Federal Defendants' compliance with the partial judgment and subsequent Orders requiring them to implement drainage service within Westlands is hereby further STAYED until January 15,

2018. During the period of the stay, Federal Defendants may, consistent with applicable law, redirect appropriations designated for drainage activities within Westlands to other, high-priority activities.

The parties are warned that this case has been pending for more than a quarter century. The buck is being passed from Congress to Congress, and the Court will not continue to enable this pattern of delay. There will be <u>no</u> further extensions past January 15, 2018.

IT IS SO ORDERED.

Dated: **March 1, 2017**   /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE